**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |
|---|---|
|  | : |
|  | : |
| **UNITED STATES OF AMERICA,** | : |
|  | :  Case No.: |
| Plaintiff, | :  6:21-cr-00102-WWB-LHP-13 |
|  | : |
| v. | :  Orlando, Florida |
|  | :  July 14, 2022 |
|  | :  9:36 A.M. - 10:41 A.M. |
|  | : |
| **DANNY WAYNE HOLMES,** | : |
|  | : |
| Defendant. | : |
|  | : |


**TRANSCRIPT OF SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE WENDY W. BERGER**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

For the Plaintiff:          Dana E. Hill
                            U.S. Attorney's Office
                            400 West Washington Street
                            Suite 3100
                            Orlando, Florida 32801

For the Defendant:          Joseph R. Johnson
                            Law Office of Joseph R. Johnson
                            PO Box 798
                            Ocoee, Florida 34761


Proceedings recorded by real-time mechanical stenography.
Transcript produced by computer-aided transcription.

Reported by:
Heather Suarez, RPR, FCRR, CRR
U.S. Official Court Reporter
(407) 801-8921 | heathersuarez.usocr@gmail.com
401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

# T A B L E   O F   C O N T E N T S

## July 14, 2022

DEFENDANT SWORN                                                        4

RENEWAL OF MOTION TO SET ASIDE WRITTEN PLEA AGREEMENT
WITH THE UNITED STATES AND/OR TO SET ASIDE GUILTY PLEA    5

ARGUMENT REGARDING ACCEPTANCE OF RESPONSIBILITY           8

ARGUMENT REGARDING MINOR ROLE REDUCTION                   10

SENTENCING ARGUMENT BY MR. JOHNSON                        14

ALLOCUTION OF THE DEFENDANT                               19

SENTENCING ARGUMENT BY MR. HILL                          22

RULING OF THE COURT                                      27

# P R O C E E D I N G S

(Call to order of the court at 9:36 A.M.)

**THE COURTROOM DEPUTY:** Case No. 6:21-cr-102, United States of America v. Danny Wayne Holmes.

Counsel, please state your appearances for the record.

**MR. HILL:** Dana Hill on behalf of the United States joined by Special Agent Michael Dahl from the FBI.

**THE COURT:** Good morning.

**MR. JOHNSON:** Good morning, Your Honor. Joe Johnson on behalf of Danny Wayne Holmes, who is seated to my left. I would note that he was -- did not rise when the Court came in because he is in a wheelchair.

**THE COURT:** Okay. All right. And Mr. Holmes is here today for the purpose of sentencing; correct?

**MR. JOHNSON:** That's correct, Your Honor.

**THE COURT:** All right. Before we begin, I will go over what I have reviewed. You can let me know if anything's been filed late that I did not see.

I have reviewed, obviously, the presentence investigation report. I reviewed the plea agreement. I have reviewed Probation's recommendation. I have reviewed reports from pretrial services. I have reviewed as well the sentencing memorandum that was submitted on his behalf and all the attachments -- well, everything in the presentence investigation report.

1        Is there anything that I may have missed?

2        And I went -- I looked also -- I think Mr. Holmes is

3   one of the last to be sentenced in this case, and I went and

4   made sure to kind of review the other defendants as well in

5   this case.

6        Anything that I might have missed?

7        **MR. JOHNSON:**  No, Your Honor.  For the purpose of

8   clarification, I'm assuming you reviewed those for purposes of

9   disparity?

10        **THE COURT:**  I did.

11        **MR. JOHNSON:**  Okay.  Thank you.

12        **THE COURT:**  Okay.  Mr. Holmes, can you raise your

13  right hand, please, sir?

14      (Defendant sworn.)

15        **THE COURT:**  All right.  Put your hand down.  I'm going

16  to ask you a few questions, sir, and if you would just do me a

17  favor and speak into the microphone.  I'm a little hard of

18  hearing, and you're soft spoken, and so if you'll speak in the

19  microphone to make sure I can hear everything you have to say.

20  As well, the court reporter is taking down everything that

21  everyone says in these proceedings, and we need to make sure

22  that she can hear you clearly as well.

23        Back on February 23rd of this year, you entered a plea

24  of guilty to Count 1 of the indictment, and that Count 1 of the

25  indictment charged you with conspiracy to possess with intent

to distribute and distribute 50 grams or more of
methamphetamine, in violation of Title 21 of the United States
Code, Sections 846 and 841(a)(1) and 841(b)(1)(A). And the
Court previously accepted your guilty plea, adjudged you guilty
of that offense, and now we've reached the stage of the
proceedings where the Court imposes sentence and hears anything
that you wish to offer in mitigation of sentence.

But before we begin, have you had an opportunity to
read and go over the presentence investigation report with
Mr. Johnson?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Okay. Are there any objections to the
factual accuracy of the report?

**MR. JOHNSON:** Your Honor, as I put in my sentencing
memorandum, we are going to renew the factual allegations, I
guess, that were set forth in our motion, which is 593, which
was -- excuse me. 593 was the sentencing memorandum -- 589,
which was the defendant's motion to set aside written plea
agreement with the United States and/or to set aside guilty
plea. So simply for the record, we're -- we want to preserve
that objection regarding he has acknowledged that he purchased
the drugs but has -- is currently -- he did dispute in the
motion that he did not sell or distribute or intend to sell or
distribute the illegal drugs in that case.

So -- and the motion, just to be clear, is our 589,

1  which was my amended, for corrections only, motion to set aside

2  written plea agreement with the United States and/or to set

3  aside the guilty plea, written plea agreement.

4  **THE COURT:** Okay. Which I have reviewed and gone

5  over. And, again, that motion was denied.

6  So, to be clear, Mr. Holmes, you object to the facts

7  as outlined in the PSR with regard to whether or not you

8  actually distributed or dealt -- sold these drugs?

9  **THE DEFENDANT:** Yes, ma'am.

10  **THE COURT:** You claim they're for your own use?

11  **THE DEFENDANT:** Ma'am?

12  **THE COURT:** So you claim that they were for your own

13  personal use?

14  **THE DEFENDANT:** For my personal use, ma'am.

15  **THE COURT:** Okay. So you're not accepting

16  responsibility for the crime with which you've pled?

17  **THE DEFENDANT:** I didn't sell nothing. It was for

18  myself. It was -- I never sold nothing. That's what you're

19  asking me.

20  **THE COURT:** Well, you pled to possess with intent to

21  distribute and distribute 50 grams or more of methamphetamine.

22  That's what you pled to. And so I'm just asking you whether or

23  not you are telling the Court that you do not accept

24  responsibility for the facts that you possessed with the intent

25  to distribute that methamphetamine.

1          **MR. JOHNSON:** Your Honor, may I speak up here? I've

2    discussed this with Mr. Hill, and he's presented me some case

3    law on the issue as well regarding the acceptance of

4    responsibility.

5          Mr. Holmes and I had multiple lengthy discussions if

6    he proceeded down the route of filing these motions and making

7    the assertions that he did in our 589, that it would almost

8    certainly not allow him to receive acceptance of responsibility

9    in this case, and he understood all that and wanted to go

10   forward with that.

11         So I don't believe at this point in time there's any

12   reasonable or logical argument I can make in favor of him

13   receiving acceptance of responsibility.

14         **THE COURT:** Okay. So I just would like Mr. Holmes --

15   you to let me know whether or not you accept responsibility for

16   the possession with intent to distribute. You're telling me

17   that if -- it was for your own personal use. You don't accept

18   responsibility for that. So I just want to make clear --

19         **THE DEFENDANT:** It was for my personal use. I accept

20   responsibility for that, but I didn't sell none, ma'am.

21         **THE COURT:** Okay. So you're not accepting

22   responsibility for intending to distribute and distributing it?

23         **THE DEFENDANT:** No, ma'am, not distributing it.

24         **THE COURT:** Okay. All right. I just want to make

25   sure.

1          **THE DEFENDANT:**  Okay.

2          **THE COURT:**  Okay.  Mr. Hill, do you have any

3  objections to the factual accuracy in the PSR?

4          **MR. HILL:**  No, Your Honor.

5          **THE COURT:**  Okay.  Are there any objections to the

6  application of the guidelines -- or the calculation -- I'm

7  sorry -- of the guidelines in the PSR?

8          **MR. JOHNSON:**  I believe Mr. Hill may want to put his

9  statement on the record regarding acceptance, which we were

10  just discussing.

11          **THE COURT:**  Correct.

12          **MR. JOHNSON:**  But other than that, I believe the

13  defense still has outstanding a request for a minor role

14  reduction in this case under the guidelines.

15          **THE COURT:**  Let's take the acceptance of

16  responsibility first.  Mr. Hill, do you have any --

17          **MR. HILL:**  Yes, Your Honor.  There's ample -- I think

18  it's argument, essentially, conceded, so I'm not going to spend

19  a lot of time arguing this, but you cannot both -- you cannot

20  accept responsibility if you're not accepting responsibility.

21  And his conduct, since the PSR was finalized in May, indicates

22  that he is not actually accepting responsibility.  And so under

23  the guide -- under the sentencing guidelines, there is -- you

24  know, I can present two cases if you'd like, Your Honor, but

25  for the record, you know, this was two unpublished cases I

found this morning on this. *United States v. Colston*, 824 F. App'x 659, and *United States v. Gittens*, 701 F. App'x 789 -- 786 -- excuse me -- were two that I provided to opposing counsel.

And, again, in the actual motion that the defense cited in paragraph 44 of that motion, essentially, Mr. -- you know, Mr. Holmes through counsel has acknowledged that if he filed this motion, he was not getting acceptance. So I think it's not really disputable at this point that, you know, in order to get acceptance, you have to show clear evidence that you have accepted responsibility. Typically, if you plead guilty to the offense, you get those levels. In this case he did that, and then he behaved in a manner that he was indicating he did not actually accept responsibility.

**THE COURT:** Okay. Any comment from --

**MR. JOHNSON:** I'll just stand on what I said previously, Your Honor.

**THE COURT:** Okay. So that would add two points?

**MR. HILL:** Yes, Your Honor.

**THE COURT:** And that would bring it to a total offense level of 34. And what would that bring the range?

**THE PROBATION OFFICER:** Your Honor, with a total offense level of 34, Criminal History Category III, he's facing 188 months to 235 months. The supervised release remains the same, which is five years. The fine remains the same, 35,000

1    to $10 million, and the special assessment of $100.

2         **THE COURT:**  Okay.  So let's -- I'll hear argument with

3    regard to the minor participant.

4         **MR. JOHNSON:**  Regarding minor role, Your Honor, I

5    think if you just look at the -- the plea agreement itself in

6    this case and the fact that -- as it came out in the motion

7    that I previously filed regarding his desire to set aside the

8    plea agreement and the guilty plea, that there is no person

9    that the United States ever had that could specifically testify

10   that Mr. Holmes sold them any illegal drugs or distributed it,

11   for that matter.

12        There is certainly an implication that he did but --

13   and assuming that he did, because the guilty plea is where

14   we're at right now, and he's going forward with the sentencing,

15   I would assert that it's only a small amount.  He clearly had a

16   heavy drug use habit himself, and there's some evidence that

17   his wife, Angela Holmes, also had a drug habit herself.  I

18   would simply assert that any drugs that were sold -- and I'm

19   making clear, based on Mr. Holmes's wishes, that he's not

20   admitting that he sold any, but assuming that he did, which is

21   what the plea agreement states, it would have just been a

22   minor, small amount, which was basically to support his drug

23   habit.

24        So -- and I -- I don't know all the quantities the

25   other people sold.  The Court, I'm sure, having reviewed the

case, is probably more familiar with that than I am, but I would assert that someone who's just selling minor amounts to support a drug addiction -- which, undoubtedly, as his criminal history indicates, he has had a substantial drug addiction for quite a few number of years. And I would submit that that and all the facts and circumstances in this case indicate that the majority of those drugs at least were used by either Mr. Holmes and/or his wife.

**MR. HILL:** Yes, Your Honor. I think the case law regarding role -- minor role is cited in -- by the probation office as well. And, essentially, what it entails is you do need to compare a conspirator's conduct with their role in the conspiracy. So in this case -- so to determine whether or not they have a minor, an average, below-average role, you measure the defendant's role against all the relative conduct and in comparison to that of other participants in that relevant conduct. And what that means is you compare them to like people in the conspiracy.

You don't compare Mr. Holmes to Mr. Alvarado; right? Obviously, Alvarado had kilos and guns and directing others, et cetera. What you do is you compare him to other street-level dealers. That would be in this case -- in the structure of this conspiracy, as Your Honor knows, was a drug trafficking operation that operated out of the trailer park in Crescent City. They imported drugs from Texas, from Georgia,

1  from North Carolina to come into Crescent City.  Then they

2  would drive ten miles south to Mr. Watson, who would then

3  distribute them throughout Florida.

4       So the others in this case who were at the same basic

5  level as Mr. Holmes were Mr. Sykes, Mr. Doerr, and Ms. Kempher.

6  And, you know, in relation to what he was doing and what he

7  was -- you know, he was an average participant.  He was not

8  lesser than those when compared, again, to those who are

9  occupying a similar role in this conspiracy.  For that reason,

10 we think minor role is not justified in this case.

11      **MR. JOHNSON:**  Your Honor, could I make one brief

12 response?

13      **THE COURT:**  Certainly.

14      **MR. JOHNSON:**  And this issue in particular I've had

15 before, and it went in front of the Eleventh Circuit back in

16 2013, and I was fortunate enough to get a reversal on an

17 unpublished opinion for my client with *U.S. v. Gary Washington*,

18 Eleventh Circuit, 2013.  That was a different issue entirely

19 because it was on a number of victims in the case, but one of

20 the things that came out in the opinion on that case was the

21 objection that we had made regarding the number of victims.

22 Nobody else had made that objection.  It was a large indictment

23 with -- credit card fraud case -- probably 13, 14 people.

24 Nobody else had made that objection.  And the Court had stated

25 that on the record, and the Eleventh Circuit basically said

1  that doesn't matter.

2      So I don't know how many of these people have objected

3  to receiving a minor role or not, but the fact that other

4  individuals may have not gotten a minor role and may never have

5  even asked for a minor role should not be part of the equation

6  in the Court making its assessment.

7      **THE COURT:**  Okay.  I find based on his relevant

8  conduct in this case that Mr. Holmes was an average participant

9  and not a minor participant, and so I'm going to overrule the

10  objection.  I believe it's properly scored.

11      Any other objections to the calculation of the

12  guidelines?

13      **MR. JOHNSON:**  No, Your Honor.  I believe that was the

14  only guideline objection that we have.

15      **THE COURT:**  All right.  Then the Court is going to

16  adopt the factual statements as outlined in the presentence

17  investigation report.

18      I realize, Mr. Holmes, that you object to those.  You

19  indicate that you were -- this was your own personal use and

20  you did not intend to distribute that.  I recognize that, but

21  the Court adopts and believes that the evidence in this case

22  suggests strongly otherwise, and I will adopt the factual

23  statements and the guideline application as amended with --

24  eliminating the points for acceptance of responsibility.

25      And so the guidelines are total offense level of 34,

criminal history category of III, a guideline range of

188 months to 235 months, five years of supervised release, a

fine range of 35,000 to $10 million, and then there's that

100-dollar special assessment because of the felony count.

Any reason why we can't proceed to sentencing right

now and hear whatever you want to offer in mitigation?

**MR. JOHNSON:** No, Your Honor.

**THE COURT:** Okay. Then --

**MR. HILL:** No, Your Honor.

**THE COURT:** -- we can proceed.

Mr. Johnson.

**MR. JOHNSON:** Would you like me to approach the podium

or stand?

**THE COURT:** You can, yes.

**MR. JOHNSON:** Okay.

**THE COURT:** It's easier for me to hear.

**MR. JOHNSON:** Okay. Okay, Your Honor. The first and

most important issue I think with Mr. Holmes is his serious

health issues, and we're addressing this for the purpose of a

variance or a departure from the sentence. I don't know if it

matters if you call it a "variance" or a "departure." Probably

more applicable is as a variance.

He's a gentleman that -- he's 62 years old. I think I

had written 61 in the sentencing memorandum, Document 593, but

he's actually 62. He fell off a roof in 2000, so he's on

1    disability.  I'm not going to repeat every single thing that's

2    in the memorandum because, obviously, it's stated in the

3    memorandum.

4         Mr. Holmes, just citing paragraph 3 of my memorandum,

5    suffers from high blood pressure, high cholesterol, sleep

6    apnea, chronic obstructive pulmonary disease, and suffered a

7    stroke in March of 2022 that caused some paralysis to his right

8    side and reflects the reason he's currently in a wheelchair.

9    He's on a cardiac arrest diet.

10        I think the biggest concern -- immediate concern for

11   Mr. Holmes -- and he demonstrated the fact that he has a hernia

12   by pulling up his shirt at the jail, and I can see a rather

13   large, round protruding mass from his stomach that I classified

14   as maybe the size of a large grapefruit or a small watermelon.

15   If he had a rupture on his hernia or his stomach, that could

16   be -- frankly, result in his immediate death.  Obviously, I'm

17   not a doctor, but it looks serious.  I want the Court to

18   request BOP, because I know you can't order them to do it --

19        **THE COURT:**  Right.

20        **MR. JOHNSON:**  -- but request that they immediately

21   evaluate that hernia and see whether or not he actually needs

22   surgery or how it can be treated because, based on past

23   experience, I'm not all that confident in whatever the Orange

24   County jail provides.

25        **THE COURT:**  I am happy to do that.  They don't have to

1   follow my directive or my request, but --

2            **MR. JOHNSON:**  I know that, Your Honor.

3            **THE COURT:**  -- I believe he needs to be seen.

4            **MR. JOHNSON:**  I think if a district court judge

5   requests that, I think they tend to give that a lot of weight.

6   So --

7            Mr. Holmes also, I think -- obviously, he's going to

8   have some struggle to take care of his personal, daily needs.

9   That is an ongoing factor that I guess, as I cited in my later

10  paragraphs, is to whether or not -- how his condition

11  progresses.  I guess, through treatment or whatever, that may

12  be an issue that he may have to address down the road.  But I

13  don't think it's fully ripe for consideration regarding all his

14  medical conditions, but it's certainly something the Court

15  should consider, I think, in the context of imposing a sentence

16  sufficient but not greater than necessary under the 3553

17  factors.

18           Mr. Holmes has indicated that he's never had any drug

19  treatment before, and that's reflected in the PSR and then also

20  in my sentencing memorandum.  He is interested in pursuing drug

21  treatment.  I think that would be beneficial for him.  He's

22  interested in pursuing psychological counseling for depression

23  and any other issues that he may have psychologically.

24           And I wanted to emphasize as well that, as I noted in

25  the memorandum, Mr. Holmes seems to have some difficulty making

good decisions, both long-term and short-term but especially

foreseeing the long-term consequences.  One of those will be,

of course, his absconding when he was on pretrial release in

this case and then driving around in North Florida in a vehicle

that's registered in his name.  I think your average person

would realize under those circumstances you're going to get

picked up in the relatively near future by law enforcement with

warrants out for your arrest on a federal criminal case, and

yet he did that anyway.

He has indicated that he was concerned that he would

die in prison.  Well, he certainly didn't help that situation

by absconding while he was on pretrial release.  And to a

certain extent, I think the motions that we had to file in this

case regarding the plea itself, which I understand that was

what he wanted to do and adamantly wished to pursue, that I did

pursue regarding the plea and the plea agreement in this case,

certainly is a result of him losing acceptance of

responsibility in his case here today.

Mr. Holmes I think, to a certain degree, and I would

argue, is -- has some diminished capacity due to his anxiety

and stress and psychological issues that surround his drug

abuse and self-treatment of both his physical and mental health

issues with drugs, and I think the Court should consider that

to a degree.

The defendant also requests that this Court recommend

1    to the Bureau of Prisons that he be placed in Coleman.  He does

2    have a wife in Central Florida and I think maybe some children

3    as well.

4         I would ask the Court also to consider all the 3553

5    factors and, as I said, that it's sufficient but not greater

6    than necessary.  I think by the time Mr. -- well, frankly, I

7    think it may be difficult for Mr. Holmes to survive his

8    sentence, and he's aware of that, depending on what it may be,

9    but we know there's a ten-year minimum mandatory applicable to

10   this case.  He's well aware of that.

11        I would request that the Court consider a downward

12   variance to the ten years because he -- even though he made

13   some -- participated in some conduct that cost him his

14   acceptance and obstruction of justice regarding his absconding,

15   I would argue that the ten years is still sufficient and not

16   greater than necessary and otherwise promotes respect for the

17   law in this case and that he would be unlikely to reoffend if

18   he were released at some point in the future, at least

19   ten years down or approximately ten years down the road.

20        Mr. Holmes wishes to make a statement to the Court

21   regarding his health and decision-making.

22        We thought Mr. Holmes's wife was going to be here

23   today, but she --

24        **THE COURT**:  She is.  She's waving in the back.

25        **MR. JOHNSON**:  Oh, okay.  So she finally showed up.

1          And I'll inquire of Mr. Holmes after he speaks if he

2     wants his wife to speak or just be here.

3          THE COURT:  Well, if she wants to speak, I'd rather

4     hear her first, then hear Mr. Holmes.

5          MR. JOHNSON:  Well, I would like to ask Mr. Holmes

6     again if he --

7          THE COURT:  If he wants her to speak?

8          MR. JOHNSON:  -- wants her to speak.

9          THE COURT:  Okay.

10          MR. JOHNSON:  Thank you.

11          Based upon my conversation with Mr. Holmes, we are

12     electing not to have his wife testify.

13          THE COURT:  Okay.  All right.

14          Mr. Holmes, what would you like to say?

15          MR. JOHNSON:  Pull down your mask if it helps you

16     talk.

17          THE DEFENDANT:  That's fine.

18          Yeah, I just want to apologize to the Court for what

19     I've done, and I need treatment.

20          THE COURT:  Okay.  Mr. Holmes, have you ever sought

21     treatment on your own?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Why not?

24          THE DEFENDANT:  I just never did.

25          THE COURT:  Okay.

1        **THE DEFENDANT:** I just didn't.

2        **THE COURT:** All right. I appreciate your honesty.

3        **MR. JOHNSON:** Mr. Holmes, can you elaborate to the

4    Court on some of your health issues and concerns regarding your

5    health?

6        **THE DEFENDANT:** Yeah. Just -- well, you more or less

7    told them. I just need some attention. I need my health

8    fixed. That's all.

9        **MR. JOHNSON:** How long have you been on disability?

10       **THE DEFENDANT:** Well, I crushed my ankles in 2001, but

11   my brother -- he put me on, you know, some money. Then he got

12   where he couldn't do it. Then I went on disability in late

13   2000.

14       **MR. JOHNSON:** So did you have the means to pay for any

15   counseling regarding your drug addiction?

16       **THE DEFENDANT:** No. I didn't have no money.

17       **MR. JOHNSON:** Would you agree that you have a serious

18   drug addiction?

19       **THE DEFENDANT:** Yes.

20       **MR. JOHNSON:** Is there anything else you'd like to

21   tell the Court or say to the Court regarding the possible

22   sentence in this case?

23       **THE DEFENDANT:** I'm sorry for what I done, and I need

24   help.

25       **THE COURT:** Mr. Holmes, do you want to explain -- I'm

going to give you an opportunity to explain your reason for absconding from supervision, from your pretrial release.

**THE DEFENDANT:** When I got COVID, I went to the hospital, and they told me that I could die and I couldn't die.

**THE COURT:** That's about the same for everybody.

**THE DEFENDANT:** So I just figured if I was going to die, I'd go up to Alabama where I want to be buried. So I just left the hospital.

**THE COURT:** Okay. Not the best decision you made.

**THE DEFENDANT:** Ma'am?

**THE COURT:** Not the best decision.

**THE DEFENDANT:** No, ma'am. No. That's the reason they caught me in Florida, coming back. I was coming to Orlando. I had enough of running. It didn't last but a couple months, but I had enough.

**THE COURT:** Well, you didn't give them your right name when they pulled you over initially, did you?

**THE DEFENDANT:** No, I didn't. I was --

**THE COURT:** So you didn't totally want to be caught at that point in time?

**THE DEFENDANT:** Well, I didn't want to be caught, but I didn't want to be up there. I wanted to come to Florida to turn myself back in.

**THE COURT:** But --

**THE DEFENDANT:** I left Alabama. I wasn't in Florida

1  two minutes and I got pulled.

2  **THE COURT:**  I get it, but when you were pulled over,

3  you gave your brother's name, not your name.

4  **THE DEFENDANT:**  I was trying to make it back to

5  Orlando, ma'am.  I just wanted it to look good for me to turn

6  myself in instead of them catching me.

7  **THE COURT:**  You thought that giving a false name would

8  make it look good on the Court as opposed to coming back to

9  Orlando?

10  **THE DEFENDANT:**  I figured if I could just get out of

11  there and got on the interstate -- I was coming to Orlando.  I

12  had enough of looking over my shoulder.

13  **THE COURT:**  Did you call your probation officer and

14  say, "Hey, look.  I've been on the run.  I'm tired of running.

15  I'm coming back -- I'm coming back to turn myself in"?

16  **THE DEFENDANT:**  No, ma'am, I sure didn't.  I mean, I

17  don't know.  I just -- just like making decisions about drug

18  counseling and stuff.  I just never got my priorities in order.

19  I knew what I wanted, but it just wasn't in order.

20  **THE COURT:**  Okay.  Anything else?

21  **THE DEFENDANT:**  No, ma'am.

22  **THE COURT:**  All right.  Anything else, Mr. Johnson?

23  **MR. JOHNSON:**  No, Your Honor.  Thank you.

24  **THE COURT:**  All right.  Mr. Hill.

25  **MR. HILL:**  So there's a lot that you already know

about this case already.  I summarized a little bit of the

structure of this conspiracy and the role that Mr. Holmes

played in this.  I think Your Honor is very familiar with the

facts of this case, and I think really -- I'm going to speak

narrowly now on the question that I think is the most

important.

We are recommending a low-end sentence in this case,

that a low-end sentence in this case will result in Mr. Holmes

receiving the second-highest sentence in the case.  And so I

think the lurking question that I think Your Honor ought to be

asking is, is it just?  You know, at the end of the day, we do

these sentencing guidelines calculations, and it doesn't point

in the right direction.  And so I think if you look carefully

at the PSR and you look carefully at the facts of this case, I

think it is.  I think it is just, a low-end sentence in this

case, even though it will be one of the higher ones imposed in

this drug conspiracy, and for two principle reasons.

First is the extensive criminal history that

Mr. Holmes has had over the years.

**THE COURT:**  The worst.  I have to say this:  In terms

of criminal histories of all these defendants, Mr. Holmes's is

the worst.

**MR. HILL:**  If you have looked them over carefully --

that's my gut too, Your Honor.  And I think that's my gut too

and especially when you look at some of the facts of these

1   cases. I mean, 1990, he was convicted of a crime involving

2   abuse, domestic abuse involving a handgun, perhaps shots being

3   fired. He pled guilty to that and was sentenced to a

4   300-dollar fine.

5          In 1994 he was convicted in federal court of

6   conspiracy to distribute drugs, methamphetamine. He did serve

7   some time in that case, but he -- you know, he -- again, that

8   was -- you know, the very same offense that he has committed

9   here, he committed 30 years ago and was convicted in Tampa for

10  that very offense.

11         And in 2002 was arrested and convicted of possession

12  of marijuana -- possession -- excuse me -- of methamphetamine

13  and sale of methamphetamine. I mention all of those because

14  all of those convictions don't count toward his criminal

15  history. All of those convictions don't count toward his

16  criminal history.

17         In fact, two of those convictions, the sale and the

18  possession in 2002 -- the sentencing guidelines look to say

19  whether you count a conviction or not based on whether somebody

20  was in jail in the 15 years before the instant conviction. So

21  you look at the instant conviction and then you look at the old

22  conviction and say, "Well, were you in jail for that old

23  conviction within 15 years?" He was released for those two

24  convictions in April of 2000- -- April 11, 2006, and because

25  the first phone call that we received in our case was

April 28th or so of 2011, he was within two weeks of having two additional convictions.

So very often when we have a situation that defendants will say, "Look. You overrepresented -- you know, this calculation overrepresents my criminal history." He came very close to being a much higher criminal history conviction level if those two had counted against him. They didn't, and I mention it because that doesn't count against him.

Now, there were convictions in here, trafficking methamphetamine and other drug crimes, that were counted against him, some grand theft. But -- yes, so he has a very long, extensive criminal history, and when he was arrested in this case, he knew what he was facing. He had had a long interaction with law enforcement, including the very same crime and the very same court before, and he didn't take it seriously. He thought, I could get away with, you know, skipping out.

And that does distinguish him from other defendants in the case. Other defendants in the case, when the feds came in, they did their arrest, they did -- they made a bunch of bad decisions, and then they started making as good -- as many good decisions as they could as quickly as possible so that they could talk about them in this sentencing. Their defense attorneys -- they put themselves in a position that their attorneys could come in and say, "Jeez, they felt really bad,

and they really felt bad about what they did," and they rushed
in and they proffered and all the things that they did to get
themselves in the best position they could for sentencing.

Mr. Holmes -- he did not. He made his job -- the jobs
of his attorneys very difficult by absconding and taking off.
And, again, that is calculated in his defense, and so -- but
he -- but that had a pretty big, substantial impact on this
case. There was no one left to cooperate against, for example,
and there was no one that -- it also resulted in obstruction of
justice by skipping out on pretrial release. So that had a big
impact too on the offense calculation.

And, finally, his decision to try to say after the
fact, "No, no, no. Buy or sell defense -- I was never really
involved in the conspiracy. I was just -- just a user. Just a
user," a line that is the mantra of most experienced drug
dealers, that personal use is sort of quick to mind.

In fact, when he was lying to the officer, when he got
picked up, got his name, the officer said, "What's that over
there in your car?"

He said, "Oh, that's my personal use meth"; right?

And so it's -- it's a quick thing, when you have a lot
of experience in the drug world interaction with law
enforcement, to say, "No, everything is personal use."

I think in his statement he couldn't help himself, and
I don't believe for a minute he was coming back here to turn

himself in. That's not the behavior of somebody who's coming
to turn themselves in, is to lie to the police officers and
have drugs on you at the time. He wasn't convicted of those,
but it was clear in the affidavit that they had discovered
those.

So, again, I am recommending a sentence that is higher
than most of the defendants in this case; and, indeed, it's
higher than every defendant other than Alvarado himself. But I
think in this case, even though he was occupying a street-level
dealer position, the history of his conduct before his arrest,
the history of his conduct after his arrest justifies that
sentence.

**THE COURT:** Anything else, Mr. Johnson?

**MR. JOHNSON:** No, Your Honor.

**THE COURT:** All right. Mr. Holmes, I've had an
opportunity to, you know, study this case, study your
involvement. I've gone through the 3553 factors to try to come
up with what I think is an appropriate sentence in your case
with the understanding that I know you have some serious health
issues. I mean, that's -- that's really without any dispute.

The nature and circumstances of this offense is it's a
serious offense. This whole conspiracy was very serious. The
drugs were, like, ice, pure methamphetamine. You know, and I
take that and your involvement in this chain -- I realize that
you're at the, you know, street-level dealer part of this

1    criminal conspiracy, but I think this is not your first rodeo.

2    I mean, you have a horrific criminal history, some of which,

3    obviously, couldn't even be calculated.  I wondered, as I was

4    going through, why is this a Level III criminal history based

5    on your priors?  Now I understand.  Sometimes it's hard to

6    figure out those guidelines, but now I understand it.  It's not

7    completely represented.

8           And a lot of these -- you've got crimes of violence.

9    You've got thefts.  You've got selling methamphetamine,

10   trafficking in narcotics.  You've -- you know, you've received

11   very little time, and then you've received significant.  I

12   think the last violation of probation or community control -- I

13   think you got, like, seven -- was it seven years?  Something

14   like that.

15          So despite this sort of incremental tick in

16   sentencings from a fine up to seven years, you have not gotten

17   the message because you have just, since you were -- you're 62

18   now, and I show you've been committing crimes since you were 29

19   pretty much nonstop.  I don't think you ever successfully

20   completed a probation.

21          **THE DEFENDANT:**  I need counseling.

22          **THE COURT:**  I'm sorry?  I understand you need

23   counseling.  I get that.  You got a drug problem, but you also

24   got a drug selling problem.

25          **THE DEFENDANT:**  Your Honor, I quit selling, ma'am.  I

1    didn't sell.

2        **THE COURT:**  So your physical health is certainly

3    mitigating, and your need -- I'm considering your need for drug

4    treatment, your need for some mental health treatment, your

5    need to get, you know, looked at medically because you've got

6    some issues going on.  So I've considered all of that and tried

7    to weigh it with what you score.  I mean, you score what you

8    score.  I mean, I certainly don't think that you need any more

9    time than is calculated in the guidelines.

10        The question is whether or not a variance below the

11    guidelines is justified or warranted when I look at all the

12    factors.  And when I look and realize, in comparison to what

13    the other individuals who were at your level scored or

14    received, I mean, it's significantly less than what you score,

15    but they didn't have the history that you have.  They didn't

16    score what you score.

17        And I understand that, you know, those are just

18    guidelines.  Those are just suggestions, that the Court can

19    vary up or down based on an individual, and I've certainly

20    considered that in your case.

21        The sentence has to reflect the seriousness of the

22    offense, promote respect for the law.  You have not had much

23    respect for the law --

24        **THE DEFENDANT:**  Ma'am --

25        **THE COURT:**  -- since you were 24.  You haven't had

much respect, if any, for the law.  You haven't -- you haven't

conformed your conduct to the law.  You haven't abided by the

terms and conditions of your probation when you are given the

grace of probation by the court.  You never successfully

completed it.  And when you did violate it, you violated it by

committing new law violations.

        **THE DEFENDANT:**  I completed federal probation.

        **THE COURT:**  Without a violation?

        **THE DEFENDANT:**  No violations, ma'am.

        **THE COURT:**  Well, I show back in 2002 --

        **THE DEFENDANT:**  Federal --

        **THE COURT:**  -- you were convicted in federal court for

trafficking in methamphetamine.  You were 41.  Adjudicated

guilty.  You were sentenced to 3 years and 10 months and

11 days in the FDOC, Florida Department of Corrections -- so

that's state.

        **THE DEFENDANT:**  Yes, ma'am.

        **THE COURT:**  That's state.  Let me find it.

        Which one is the federal one?

        **MR. HILL:**  I think he's referring to paragraph 147,

Your Honor, and referring to the period of time between 1997

and 2000.

        **THE COURT:**  Okay.  Right.  Okay.  Correct.  You

completed that probation back in -- you completed that

supervised release back in December of 2000.

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  So I'm looking at your criminal history

3     with respect to the law.  I'm looking at the fact that you

4     absconded in this case.  And, you know, I appreciate your

5     reason, I mean, for absconding, but, you know, it's neither

6     here nor there.  When you're given the grace of being allowed

7     to be out on bond in a case such as this, when you have the

8     criminal history that you have, on an ankle monitor on house

9     arrest -- that's grace.  That's mercy from the court to allow

10    you to do that, and then you violate the terms, which,

11    basically, you snub your nose at the court for giving you that

12    grace.  You know, it doesn't show much respect for the law.  It

13    doesn't show much respect for the court or for the grace and

14    mercy that the court gave you at that time to allow you to

15    remain free.

16         It's also -- the sentence has to afford adequate

17    deterrence to criminal conduct.  Well, I think it goes without

18    saying that you have remained undeterred.

19         **THE DEFENDANT:**  What, ma'am?

20         **THE COURT:**  You have been undeterred.  You have not

21    ceased your criminal conduct.

22         **MR. JOHNSON:**  Your Honor, he just asked me what that

23    means.  Can I have a second with him?

24         **THE COURT:**  Sure.

25         **MR. JOHNSON:**  For the record, he inquired as to what

1   "undeterred" meant, and I explained to him that the arrests and

2   convictions that he previously had did not prevent him or keep

3   him from committing future offenses, and I would just add, even

4   with the ten-year minimum mandatory, this sentence will be

5   longer than any sentence he's ever had.

6          **THE COURT:**  Basically, what it means is you've

7   committed a crime.  You were sentenced.  We always hope that a

8   sentence will rehabilitate an individual and prevent -- and

9   make it where they -- you know, they're not going to commit

10  another crime after, you know -- I mean, some people make

11  mistakes.  They have their sentence.  They complete their

12  probation.  They go on and lead law-abiding lives and turn

13  their lives around, make positive choices, make better choices,

14  and turn their lives around, and we don't see them anymore.

15  That means, you know, whatever happened deterred them from

16  committing any new offenses.

17          When an individual is undeterred, it doesn't change

18  anything.  They just continue the same conduct over and over

19  and over again.  So any crime, any sentence, any probation

20  that's been offered to you hasn't helped, hasn't helped you

21  stop committing offenses.  You just keep committing them.

22  That's what I mean when I say you have been undeterred.

23          **THE DEFENDANT:**  Okay.  Thank you.

24          **THE COURT:**  Another thing that the Court has to look

25  at is to protect the public from future crimes.  Again, you

1   continue to commit crimes, and these are not -- not all of your

2   crimes are drug crimes. There's domestic abuse crimes. There

3   are driving crimes.

4         What's going on -- has he -- does he still have the

5   pending charge in Polk County?

6         **MR. JOHNSON:** I'm not certain whether he does or not,

7   Your Honor, frankly.

8         **THE COURT:** Okay. Because there was a pretrial

9   hearing, it looked like, on May 17th on those pending theft

10   charges. But you have --

11         **MR. JOHNSON:** I didn't get into this case, I think,

12   until sometime in May. I'm not sure exactly what point, but,

13   obviously, I was not his original attorney.

14         **THE COURT:** Right. I understand. He's had several.

15         So we have driving charges. We have theft charges.

16   We have trespassing, grand theft, battery, dangerous display of

17   a weapon. So, Mr. Holmes, you pose a danger to the public

18   based on the crimes -- based on your criminal history and based

19   on your current crime which you are here for sentencing today.

20   I have to look at what's going to be an appropriate sentence

21   that's going to protect the public from you.

22         Now, the sentence also has to -- I have to consider

23   your need for educational or vocational training, for medical

24   care, and other types of services. And, you know, I know you

25   need drug treatment, without a doubt. I know you need medical

1    treatment. And these are all things that the Court has

2    considered and will certainly recommend in any sentence that

3    the Court imposes today, that you get the treatment that you

4    need.

5         But, again, you know, you can't rely on the government

6    or the state to give you treatment. I mean, at some point you

7    got to make that decision that you're going to do it on your

8    own and -- because -- you know, I'm hopeful that you will, you

9    know, complete your sentence and, you know, you'll be in a

10   position, you know, at some point where nobody's supervising

11   you, and you're going to have to maintain your life and

12   maintain your sobriety and do it well on your own. But at some

13   point you have to take responsibility for your own life and the

14   choices that you make.

15        We can give you the best treatment that you want or

16   that money can buy, but if you don't accept it and you don't

17   want to make the change, then it doesn't matter what kind of

18   treatment you get. I mean, it's up to you, and you just need

19   to make better choices.

20        And I've also considered, as I said earlier, your

21   codefendants and their sentences and the need to avoid

22   unwarranted sentencing disparities, and I'm going to highlight

23   the term "unwarranted" there because there are situations where

24   a sentence significantly higher than a codefendant's sentence

25   is unwarranted.

1          **MR. JOHNSON:** Your Honor, he's --

2          **THE COURT:** I don't believe --

3          **MR. JOHNSON:** He's asking what "unwarranted" -- I'm

4    sorry if I interrupted you.

5          **THE COURT:** "Unwarranted" means not fair, not -- I

6    shouldn't do -- you know, unwarranted is, you know, not

7    justified. You know, you can't justify why someone is

8    sentenced so much higher than somebody else. It really

9    shouldn't be done. It's not warranted. It's not -- you know,

10   the facts don't support it. It's unsupported. Those are all

11   reasons something would be unwarranted.

12         Your case is different based on all the circumstances.

13   Your case is different. I don't intend to punish you any more

14   than the guidelines for what your criminal history is. I mean,

15   it's all been calculated. Except there are a couple -- I mean,

16   really your criminal history probably would have been scored

17   much higher. I mean, those offenses that are unscorable in

18   federal court would be scorable in state court.

19         So pursuant to Title 18 of the United States Code,

20   Sections 3551 and 3553, it's the judgment of the Court,

21   Mr. Holmes, that you're committed to the custody of the Bureau

22   of Prisons to be imprisoned for a term of 188 months, which is

23   the low end of the guidelines.

24         Upon release from imprisonment, you will serve a

25   five-year term of supervised release. While on supervised

1    release, you will comply with the mandatory and standard

2    conditions adopted by the Court in the Middle District of

3    Florida, and you'll comply with the following special

4    conditions:

5            With regard to the Bureau of Prisons, I will recommend

6    that you be placed at Coleman or, if Coleman is unavailable,

7    any other prison in the state of Florida.  If I don't do that

8    and Coleman's not available, they can send you up to Washington

9    state or something.  So I'm going to recommend that you be

10   placed in Florida.

11           More importantly, though, I recommend that you be

12   placed in a prison that has the RDAP program, which is the drug

13   treatment program, and can provide you with the needed medical

14   care that you need, and so I will recommend that he be seen for

15   his hernia.  So I think that they should definitely get you the

16   treatment that you need.

17           Again, that's up to the Bureau of Prisons.  I can't

18   order you into a specific prison.  I can't order the prison to

19   give you any sort of treatment.  I can just recommend it.  To

20   the extent that they will look at my recommendation, I will put

21   it in the sentence.

22           I'm also going to recommend that you get some mental

23   health treatment while you're in the Bureau of Prisons.

24           Having been convicted by a qualifying -- of a

25   qualifying felony, you'll cooperate in the collection of DNA as

1    directed by your probation officer.

2         You'll refrain from any unlawful use of a controlled

3    substance.  You'll submit to one drug test within 15 days of

4    being placed on supervision and at least two periodic drug

5    tests thereafter as directed by your probation officer.  And

6    you'll submit to random drug testing not to exceed 104 tests

7    per year.

8         So you got a long sentence to do in the Bureau of

9    Prisons.  And I didn't just fall off the turnip truck.  I know

10   that people can get narcotics in prison, but I would suggest

11   that you make a good choice and you not engage in that activity

12   because there will be no reason for you to test positive

13   15 days after being released from prison.

14        **MR. JOHNSON:**  Your Honor, I was just -- he was

15   asking -- 188-month sentence, so I explained to him that, well,

16   120 is 10 years, so 180 would be 15.  So he's got about

17   15 years, 8 months under the terms of the sentence.

18        And I would also note, for purposes of the record,

19   preserve the objection to a sentence greater than 10 years

20   being unreasonable, noting that it is a low guideline sentence

21   as well, but I'm doing that to preserve it for the record.

22        **THE COURT:**  I understand.  I understand.

23        Basically, what I'm saying, Mr. Holmes, is I know of

24   no drug that stays in somebody's system 15 years.

25        **MR. JOHNSON:**  He's apparently having trouble hearing

1     you when he asked what you said.

2            THE COURT:  What I'm saying, Mr. Holmes, is you have,

3     basically, a 15-year, 8-month sentence, and then after that you

4     have supervised release.  Within 15 days of your release from

5     custody, whenever that is, you have to report to Probation, and

6     they're going to drug test you.  And so what I'm saying is no

7     drug stays in somebody's body 15 years.  So there will be no

8     excuse for you to test positive 15 days after you are -- within

9     15 days after you are released from custody.  So don't use

10    drugs in prison because --

11           THE DEFENDANT:  No, ma'am.  If you do your math,

12    15 years, I'll be dead, so we don't have to worry about that.

13           THE COURT:  Maybe not.  I'm just saying that -- don't

14    test positive.

15           Based on your financial status, the Court will waive

16    imposition of a fine in your case.

17           Are there any forfeiture matters?

18           MR. HILL:  No, Your Honor.

19           THE COURT:  You will pay to the United States a

20    special assessment of $100, which is due immediately.

21           THE DEFENDANT:  Immediately?

22           THE COURT:  After considering the advisory sentencing

23    guidelines, all the factors identified in Title 18 of the

24    United States Code, Sections 3553(a)(1) through (7), the Court

25    finds that the sentence imposed is sufficient but not greater

1    than necessary to comply with the statutory purposes of

2    sentencing.

3         The sentence is based on a number of things that I

4    have already identified: the nature and circumstances of the

5    offense, your history.  I've also considered the sentences of

6    your codefendants, particularly those within your -- that were

7    charged with the same offense but within your -- your activity,

8    and I believe that although your sentence is different than

9    theirs, that it was warranted in this case.

10         The Court accepted your plea agreement and was

11    satisfied that it adequately reflected the seriousness of the

12    actual offense behavior and that the -- accepting the agreement

13    would not undermine the statutory purposes of sentencing in

14    your case.

15         The Court having pronounced sentence, does counsel for

16    Mr. Holmes or the Government have any objection to the sentence

17    imposed or the manner in which the sentence was imposed?

18         **MR. HILL:**  No objection, Your Honor.

19         **MR. JOHNSON:**  None that were not previously made,

20    either verbally or in writing in the sentencing memorandum.

21         **THE COURT:**  Okay.  Mr. Holmes, you're hereby remanded

22    to the custody of the United States Marshal to await

23    designation by the Bureau of Prisons and placement into the

24    programs that I've identified.

25         Are there any other programs specifically that you

1    want me to recommend other than anything I've already said?

2        **MR. JOHNSON:** No, Your Honor. And just for

3    purposes -- it just occurred to me that I want to voice on the

4    record that -- preserve any objection regarding his motion for

5    a new -- or motion to set aside the plea agreement and motion

6    to withdraw the plea. I -- because I'm not sure I exactly said

7    that in the sentencing memorandum because I was trying to

8    address sentencing, but I just want to clarify it on the record

9    because I've had too many appeals where, no matter what you

10    say, the Government claims waiver. So that's why I'm doing

11    that.

12        **THE COURT:** Okay. Mr. Hill -- Mr. Holmes, to the

13    extent permitted by your plea agreement, you have the right to

14    appeal your sentence within 14 days of entry of the judgment.

15    Failure to file an appeal within that 14-day period would waive

16    your right to appeal. The Government also has a right to

17    appeal the sentence in your case.

18        You are entitled to the assistance of counsel in

19    taking an appeal. If you can't afford an attorney, one would

20    be appointed to represent you; and if you could not afford the

21    filing fee, then the clerk of the court would be directed to

22    accept your notice of appeal without such a fee. Good luck to

23    you, sir.

24        **MR. JOHNSON:** Thank you, Your Honor.

25        (Proceedings concluded at 10:41 A.M.)

1

## CERTIFICATE OF REPORTER

2   I certify that the foregoing is a correct transcript of the
    record of proceedings in the above-titled matter.

3

4   s/Heather Suarez_____          08/29/2022
    Heather Suarez, RPR, FCRR, CRR          Date

5   U.S. Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25